**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 10, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

    No. 22-3019

OMAR FRANCISCO ORDUNO-
RAMIREZ,

    Defendant - Appellant.

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. Nos. 2:19-CV-02491-JAR-JPO, 2:19-CV-02166-JAR-JPO &**
**2:14-CR-20096-JAR-7)**

_____

Paige A. Nichols, Assistant Federal Public Defender (Melody Brannon, Federal Public Defender, with her on the briefs), Topeka, Kansas, for Defendant-Appellant.

Bryan C. Clark, Assistant United States Attorney (Duston J. Slinkard, United States Attorney; Carrie N. Capwell, and James A. Brown, Assistant United States Attorneys, with him on the briefs), Kansas City, Kansas, for Plaintiff-Appellee.

_____

Before **MATHESON**, **KELLY**, and **PHILLIPS**, Circuit Judges.

_____

**MATHESON**, Circuit Judge.

_____

Omar Francisco Orduno-Ramirez pled guilty to a conspiracy drug offense. He

received a below-Guidelines-range prison sentence of 144 months, which we affirmed on

direct appeal.  After he pled guilty, but before he was sentenced, the Kansas United States Attorney's Office ("USAO") obtained soundless video recordings of five meetings between Mr. Orduno-Ramirez and his attorney.

Mr. Orduno-Ramirez sought postconviction relief under 28 U.S.C. § 2255, arguing the Government violated the Sixth Amendment by intruding on his meetings with counsel.  The district court denied relief.  It said that *Shillinger v. Haworth*, 70 F.3d 1132 (10th Cir. 1995)—which held that a pre-plea or pre-conviction ("pretrial") intrusion is a per se Sixth Amendment violation—does not apply to post-plea intrusions.  Instead, the court determined that Mr. Orduno-Ramirez was required to show prejudice and found he had not done so.

We granted a certificate of appealability ("COA") on the following issue:

> [W]hether the district court erred in concluding that the United States' purposeful sentencing-phase intrusion into a defendant's confidential attorney-client communications is not a per se Sixth Amendment violation.

Doc. 10920619, at 2.

Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we affirm the denial of Mr. Orduno-Ramirez's § 2255 motion.  We agree with the district court that the *Shillinger* per se rule does not apply.  We affirm because the Government has shown the intrusion did not prejudice Mr. Orduno-Ramirez's sentencing, and Mr. Orduno-Ramirez does not argue he suffered any prejudice.

2

## I.  BACKGROUND – USAO INTRUSIONS

### A. *Attorney-Client Intrusions*

CoreCivic ("CCA") is a private detention facility in Leavenworth, Kansas. *See United States v. Carter*, 429 F. Supp. 3d 788, 798 n.5 (D. Kan. 2019).[1]  In 2016, the USAO suspected that certain inmates at CCA were engaged in a drug-smuggling conspiracy. *Id*.  The USAO initiated an investigation. *Id*.  It obtained and served a broad grand jury subpoena asking for all video and still images from all surveillance cameras at CCA, including footage from attorney visitation rooms.  The subpoena also requested recordings of inmates' telephone calls, including calls with their attorneys. *Id*. at 846-48.  The subpoena garnered information on "potentially hundreds of CCA detainees." *Id*. at 869.  The investigation led to the indictment of Karl Carter and five others for conspiracy to distribute controlled substances in the CCA. *Id.* at 801.  At a discovery conference, the government "discussed having obtained voluminous video-surveillance footage from video cameras stationed throughout the CCA facility." *Id.*

---

[1] Much of our discussion of the factual background derives from the district court's August 13, 2019 order in *United States v. Carter*, which includes the district court's findings about the USAO's intrusions into attorney-client communications at CCA.  429 F. Supp. 3d at 788.  Both parties here use facts from *Carter*, *see* Aplt. Br. at 4; Aplee. Br. at 47, and neither argues *Carter*'s factual findings were clearly erroneous.  *See United States v. Craine*, 995 F.3d 1139, 1153 (10th Cir. 2021) (we review a district court's factual findings for clear error).

### B. *The District Court's Investigation and Findings*

When the Federal Public Defender for the District of Kansas ("FPD") learned about the foregoing, it was allowed to "intervene . . . in [the *Carter*] case on behalf of its many clients detained at CCA." *Id*. at 799. The FPD "filed a motion for return of property under Fed. R. Crim. P. 41(g)" in "dozens of . . . active cases" to divest the USAO of the recordings. *Id*. at 801, 802 n.13. The district court held several evidentiary hearings to "find out from the Government the scope of its discovery efforts that potentially intruded on confidential in-person and telephonic attorney-client meetings, but the Government evaded the Court's questions, and denied that its practices implicated the Sixth Amendment." *Id*. at 799.

In October 2016, the district court appointed a special master to investigate. *Id*. at 802. It instructed the USAO to cooperate with the special master, return privileged material it had obtained unlawfully, and preserve documents relevant to the investigation. *Id*. at 808-10. But according to the court, the USAO defied these instructions by (1) deleting files from its computer system and refusing to preserve computer hard drives, *id*. at 814-18; (2) delaying implementation of a litigation hold on relevant files, *id*. at 818-23; (3) failing to make personnel available to the special master, *id*. at 827; (4) failing to produce documents the special master requested, *id*. at 828-29; and (5) misrepresenting to the court whether specific USAO attorneys reviewed certain attorney-client communications, *id*. at 831.

Based on the special master's findings, the district court found that USAO attorneys intentionally intruded on attorney-client communications because they

4

knew the subpoena would sweep in video footage and phone calls but took no reasonable steps to filter out privileged material. *Id*. at 835-36; 848; 864-65; 898. The court also found there was "no legitimate law-enforcement purpose" for the breadth of the USAO's collection of attorney-client communications. *Id*. at 899. And the court documented at least one occasion on which USAO attorneys used information they gained from the defendant's attorney-client communications to influence plea negotiations with that defendant. *Id*. at 853.

In sum, the district court found that the USAO intruded into a large number of defendants' communications with their attorneys, with no legitimate law-enforcement purpose, and later tried to conceal these actions. As the district court put it, the USAO committed "systemic prosecutorial misconduct" with "far reaching implications in scores of pending [] cases," and exacerbated the harm by "delay[ing] and obfuscat[ing] th[e] investigation" into its misconduct. *Id*. at 903.

By the time of the *Carter* opinion in 2019, many defendants affected by the USAO intrusions, including Mr. Orduno-Ramirez, ROA, Vol. II at 293, had filed motions for post-conviction relief under § 2255. *Carter*, 429 F. Supp. 3d at 903. The district court reassigned all of those cases to itself, *id*. at 904, and later aggregated them into one "consolidated master case." *See* ROA, Vol. I at 444; *see also In re CCA Recordings 2255 Litig.*, No. 19-2491 (D. Kan.) (the "consolidated master case").

5

C. *Legal Background*

1. **The Sixth Amendment Right to Counsel**

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel "at all 'critical' stages of the criminal proceedings." *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (quotations omitted). Sentencing is one of the "critical stages." *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

Because the primary purpose of the right to counsel is "to secure the fundamental right to a fair trial," the "'benchmark' of a Sixth Amendment claim is 'the fairness of the adversary proceeding.'" *Shillinger v. Haworth*, 70 F.3d 1132, 1141 (10th Cir. 1995) (quoting *Nix v. Whiteside*, 475 U.S. 157, 175 (1986)). Thus, to prove a Sixth Amendment violation, a defendant must normally demonstrate "some effect of [the] challenged conduct on the reliability of the trial process"—prejudice. *Shillinger*, 70 F.3d at 1141 (quotations omitted). To establish prejudice, a defendant must normally show "that there is a realistic possibility of injury to defendants or benefit to the [government]." *Id*. at 1140 (quoting *United States v. Mastroianni*, 749 F.2d 900, 907 (1st Cir. 1984) (quotations omitted)).

But "[i]n certain Sixth Amendment contexts, prejudice is presumed." *Id*. at 1141 (alterations in original) (quoting *Strickland*, 466 U.S. at 692). These include "various kinds of state interference with counsel's assistance." *Strickland*, 466 U.S. at 692. For example, the Supreme Court has found per se Sixth Amendment violations when the government prevented the defendant from "consult[ing] his attorney" before testifying, *Geders v. United States*, 425 U.S. 80, 81 (1986), or barred

direct examination of the defendant, *Ferguson v. Georgia*, 365 U.S. 570 (1961). *See also United States v. Lustyik*, 833 F.3d 1263, 1269-70 (10th Cir. 2016) (listing types of per se Sixth Amendment violations). "[P]rejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost." *Strickland*, 466 U.S. at 692.

In *United States v. Cronic*, 466 U.S. 648 (1984), when discussing ineffective-assistance-of-counsel claims, the Supreme Court identified three circumstances when a per se rule is appropriate: (1) the defendant suffers "the complete denial of counsel . . . at a critical stage" of the criminal justice process; (2) "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) when "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate." *Id*. at 659-60. These examples illustrate that a per se Sixth Amendment rule is appropriate only for extreme situations. *See Florida v. Nixon*, 543 U.S. 175, 190 (2004) (*Cronic* "illustrated just how infrequently the surrounding circumstances will justify a presumption of ineffectiveness" (quotation and citation omitted)).

The Court's caution about per se rules also extends to cases where the defendant alleges government interference in an attorney-client relationship. For instance, in *Weatherford v. Bursey*, 429 U.S. 545 (1977), the Court struck down a Sixth Amendment per se rule that bypassed the prejudice question. There, an undercover officer participated in the defendant's trial strategy meetings with defense counsel. *Id*. at 547-48. The court of appeals reversed the defendant's conviction,

adopting a "per se right-to-counsel rule" under which any time an undercover officer intruded on attorney-client conversations, "a violation of the defendant's constitutional rights has occurred . . . whether or not any specific prejudice to the defendant's preparation for or conduct of the trial is demonstrated or otherwise threatened." *Id*. at 550. The Court held that this "per se rule cut[] much too broadly." *Id*. at 557. Instead, it said the defendant should be required to demonstrate some likelihood of prejudice due to the intrusion—which was lacking because "at no time did [the officer] discuss with or pass on to . . . the prosecuting attorney . . . any details or information regarding [the defendant's] trial plans." *Id*. at 548 (quotations omitted); *see also id*. at 557-58.

In *United States v. Morrison*, 449 U.S. 361 (1981), the Court again reversed a per se Sixth Amendment ruling. *Id*. at 363-64. The Third Circuit had "concluded that [the defendant's] Sixth Amendment right to counsel had been violated" by law enforcement agents who spoke to her outside her attorney's presence, "and that whether or not any tangible effect upon [the defendant's] representation had been demonstrated or alleged, the appropriate remedy was dismissal of the indictment with prejudice." *Id*. at 363. The Court disagreed, writing that finding a per se violation was inappropriate, and that any Sixth Amendment remedy must be tailored to address the prejudice the defendant suffered. *Id*. at 365 ("Our approach [to putative Sixth Amendment violations] has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective

8

assistance of counsel and a fair trial . . . .  Absent such impact on the criminal proceeding, [] there is no basis for imposing a remedy in that proceeding . . . .").[2]

## 2. *Shillinger v. Haworth*

In *Shillinger*, the defendant and his attorney conducted several "trial preparation sessions."  70 F.3d at 1134.  Because the defendant was in custody, a sheriff's deputy was required to be present.  *Id*.  The defense attorney "paid the deputy overtime wages for his services," "instructed the deputy to consider himself an employee of defense counsel during the [] sessions," and said that "none of this goes out of this room."  *Id*.  But the deputy spoke with the prosecuting attorney, who obtained damaging information about the defense and attempted to use it at trial. *Id*. at 1134-36.  After a jury convicted the defendant, he sought post-conviction relief, arguing the deputy's actions violated his Sixth Amendment right to counsel. *Id*. at 1136.

We agreed and adopted a per se rule,[3] holding that "a prosecutor's intentional intrusion into the attorney-client relationship constitutes a direct interference with the

---

[2] The Court has occasionally upheld per se Sixth Amendment rules in government-interference cases.  But as the Court wrote in *Strickland*, most of these rules apply to situations where the government "interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense," such as a "bar on summation at [a] bench trial," a "requirement that [the] defendant be [the] first defense witness," or a "bar on direct examination of [the] defendant." 466 U.S. at 686 (collecting cases; citations omitted).

[3] When we decided *Shillinger*, there was a circuit split on whether "intentional intrusions by the prosecution [on a defendant's attorney-client relationship] constitute *per se* violations of the Sixth Amendment."  70 F.3d at 1140.  Some courts held that such an intrusion automatically entitled a defendant to a new trial; others held that

Sixth Amendment rights of a defendant . . . . [A]bsent a countervailing state interest, such an intrusion must constitute a *per se* violation of the Sixth Amendment." *Id.* at 1142. Put differently, "when the [government] becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect . . . must be presumed." *Id.* This presumption is conclusive—the court must accept that the defendant suffered prejudice even if the government presents evidence to the contrary.[4]

In *Shillinger*, we provided two justifications for presuming prejudice: (1) the inherent harmful effect of such intrusions on adversarial proceedings, especially the trial; and (2) the need to deter government misconduct. *Id*.

First, we said intrusions into the attorney-client relationship are a "state-created procedure[] [to] impair the accused's enjoyment of the Sixth Amendment guarantee by disabling his counsel from fully assisting and representing him."

---

the defendant needed to show prejudice; and others imposed a rebuttable presumption of prejudice on the government. *Id*. at 1140-41.

[4] Courts use the phrase "conclusive presumption" as synonymous with irrebuttable presumption. *See, e.g.*, *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268-69 (2014). A "rebuttable presumption" is one that may be disproved. *Id*. (discussing the difference between conclusive and rebuttable presumptions). Instead of using the phrase "conclusive presumption," *Shillinger* said that a pretrial intrusion is a "*per se* violation of the Sixth Amendment. In other words . . . a prejudicial effect on the reliability of the trial process must be presumed." 70 F.3d at 1142. We use "conclusive presumption" to denote the *Shillinger* rule.

10

*Id*. at 1141 (quoting *United States v. Decoster*, 624 F.2d 196, 201 (D.C. Cir. 1979)).

These intrusions inherently harm "the reliability of the trial process," meaning

"[p]rejudice in these circumstances is so likely that case-by-case inquiry" about

prejudice is unnecessary. *Id*. at 1142 (alterations in original) (quoting *Strickland*,

466 U.S. at 692).

Second, we said "direct state interference" with attorney-client

communications is "susceptible to easy correction by prophylactic rules." *Id*. at 1142

(quoting *Decoster*, 624 F.2d at 201). We concluded that "no other standard [than a

per se rule] can adequately deter this sort of misconduct." *Id*. at 1142.

### D. *The District Court's Generally Applicable Orders*

After the district court discovered the USAO's intrusions into attorney-client

communications, it issued a standing order appointing the FPD to represent

defendants with claims that the USAO violated their Sixth Amendment rights by

collecting privileged communications. The FPD filed separate motions under

28 U.S.C. § 2255 on behalf of multiple defendants, including Mr. Orduno-Ramirez,

and argued that they were entitled to a conclusive presumption of prejudice under

*Shillinger*. ROA, Vol. I at 638-51.

The district court aggregated these post-conviction proceedings into one

consolidated master case, *In re CCA Recordings 2255 Litig.*, No. 19-2491. It then

divided over 100 consolidated petitioners' alleged intentional-intrusion Sixth

Amendment claims into violations that occurred (1) before the plea or conviction,

(2) after the plea or conviction but before sentencing, and (3) after sentencing. ROA, Vol. I at 641-42.

In December 2021, the district court issued a memorandum and order stating general principles it would apply to the second category of claims—alleged Sixth Amendment violations that occurred "post-plea or conviction but prior to sentencing." *Id*. at 653. For ease of reference, we refer to these situations as "post-plea intrusions." The court held that for such intrusions, *Shillinger*'s conclusive presumption does not apply, and the defendant must show actual prejudice to be entitled to relief. *Id*. at 652.[5]

The district court noted that "when the alleged intrusion occurs after the petitioner entered a guilty plea or was convicted at trial, it eliminates the possibility that the intrusion could have tainted the petitioner's plea or conviction." *Id*. Instead, "[t]he only tainted proceeding could be sentencing." *Id*. at 655. The court said the justifications for *Shillinger*'s conclusive presumption do not support extending the presumption to post-plea intrusions. *Id*. at 652. First, it found that *Shillinger*'s likelihood-of-prejudice rationale applies with less force for a post-plea intrusion

---

[5] The district court also held that under *Tollett v. Henderson*, 411 U.S. 258 (1973), defendants who suffered pretrial intrusions and later pled guilty waived any later challenge to those intrusions. *Tollett* held that "[w]hen a criminal defendant has [pled guilty], he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," except to the extent the deprivation rendered his plea involuntary. 411 U.S. at 267. The *Tollett* rule applies only to pre-plea constitutional violations. It does not foreclose relief for Mr. Orduno-Ramirez because his alleged Sixth Amendment violation occurred after he pled guilty.

violation because it does not "pervade the entire criminal proceeding . . . the way it does at trial," and "does not implicate the same potential for prejudice." *Id*. at 655. Second, as to *Shillinger*'s deterrence rationale, the district court said the USAO's misconduct was serious, but "[d]eterrence of such misconduct alone is not enough to justify presumptive relief" absent "the fairness or reliability concerns identified" in *Shillinger*. *Id*. at 657.

## II. **BACKGROUND – MR. ORDUNO-RAMIREZ'S CASE**

Mr. Orduno-Ramirez's case became enmeshed in the USAO intrusions outlined above.

### A. *Indictment and Guilty Plea*

In October 2014, Mr. Orduno-Ramirez was indicted in the District of Kansas for conspiracy to distribute and possess with intent to distribute more than 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). The district court appointed Kevin Babbitt to represent him. Mr. Orduno-Ramirez was incarcerated at CCA pending trial. On April 13, 2016, he pled guilty under a plea agreement.

### B. *Government Intrusion*

Between March 11 and April 11, 2016—before Mr. Orduno-Ramirez pled guilty—he met four times with Mr. Babbitt in an attorney visitation room at CCA. ROA, Vol. I at 258-59. On May 6—after he pled guilty—Mr. Orduno-Ramirez and Mr. Babbitt met to discuss his case in advance of sentencing. *Id*. at 259-60. The visitation room surveillance camera captured video footage, but not sound, from

these meetings. *Id*. at 258-59. On May 17, the USAO obtained copies of these five soundless video recordings. *Id*. at 603.

Mr. Orduno-Ramirez does not argue that CCA's choice to keep a video camera in the attorney meeting room was itself an intrusion. Rather, he asserts that the intrusion occurred when the USAO obtained the footage on May 17. *See* Aplt. Br. at 3. The parties thus agree that the USAO intruded on Mr. Orduno-Ramirez's communications with his attorney only after he pled guilty. *See also* Aplee. Br. at 65.[6]

The recordings reveal little about Mr. Orduno-Ramirez's interactions with Mr. Babbitt because they contain no sound. In each recording, Mr. Babbitt and Mr. Orduno-Ramirez appear to speak, make gestures, and examine documents and legal materials. *See* ROA, Vol. I at 258-60.[7]

## C. *Sentencing and Direct Appeal*

In November 2017, the district court sentenced Mr. Orduno-Ramirez to 144 months in prison, a below-Guidelines-range sentence reflecting a 44-month

---

[6] Even though some of the video footage depicted pre-plea meetings between Mr. Orduno-Ramirez and Mr. Babbitt, the intrusion here was post-plea because the Government acquired the footage after Mr. Orduno-Ramirez pled guilty. *See* Aplt. Br. at 19 (describing the issue in this case as "whether a prosecutor who intentionally intrudes upon the defendant's attorney-client communications after a trial or guilty plea, but before sentencing, commits a per se Sixth Amendment violation"); Aplee. Br. at 5.

[7] This description of the videos derives from a summary of their contents by Mr. Orduno-Ramirez's counsel, prepared at the direction of the district court. *See* ROA, Vol. I at 257-60.

downward variance.  Mr. Orduno-Ramirez appealed his sentence, arguing it should have been lower because he was a minor participant in the conspiracy.  We affirmed. *United States v. Orduno-Ramirez*, 719 F. App'x 830, 830-31 (10th Cir. 2017) (unpublished).

### D.  *Post-Conviction § 2255 Proceedings*

In March 2019, the FPD moved on behalf of Mr. Orduno-Ramirez for postconviction relief under 28 U.S.C. § 2255, alleging that the Government violated his Sixth Amendment right to counsel by intruding on his attorney-client communications.  ROA, Vol. II at 293-328.  Mr. Orduno-Ramirez argued that *Shillinger*'s presumption should extend to post-plea intrusions, and he therefore did not need show prejudice to succeed on his Sixth Amendment claim.  *Id*. at 314-15.

The Government opposed the motion, arguing that *Shillinger*'s conclusive presumption should not extend to the sentencing phase.  And it contended that Mr. Orduno-Ramirez had not shown any actual prejudice.  ROA, Vol. II 360-63.  To support this contention, the Government submitted an affidavit from the lead prosecutor in Mr. Orduno-Ramirez's case stating that "[a]t no time during my involvement in this case did I view or was privy to any video recordings of the defendant at CCA" and "[a]t no time prior to the defendant's sentencing . . . was I aware that video recordings existed of the defendant's meetings at CCA with his defense counsel." *See* ROA, Vol. II at 385-86.  At one point, another prosecutor entered an appearance in Mr. Orduno-Ramirez's case, but she withdrew from the case in 2016—well before Mr. Orduno-Ramirez's sentencing.  *Id*. at 385.  Thus, the only

15

prosecutor involved in Mr. Orduno-Ramirez's sentencing did not view the soundless video recordings.[8]

The Government also pointed out that Mr. Orduno-Ramirez had not identified "any snippet on any video in his case where the substance of discussions relating to legal advice or strategy is discernible or ascertainable by any viewer of the video." *Id*. at 360. The Government further observed that prejudice was unlikely because Mr. Orduno-Ramirez received a favorable sentence. *Id*. at 362.

Mr. Orduno-Ramirez's § 2255 motion became part of the consolidated master case, *In re CCA Recordings 2255 Litig.*, No. 19-2491, along with the other post-conviction proceedings. As noted, the district court's December 2021 order in the consolidated case held that the *Shillinger* conclusive presumption does not apply to post-plea intrusions. The court then applied this holding to Mr. Orduno-Ramirez's § 2255 motion. ROA, Vol. II at 539-53. It rejected his claim that the Government's intrusion into his communications with his attorney constituted a per se Sixth Amendment violation. The court also found there was no "realistic possibility that [Mr. Orduno-Ramirez] was prejudiced as a result of the government's alleged intrusion" because (1) the Government received the video recordings after he pled

---

[8] At oral argument, the FPD noted that the other prosecutor did not withdraw from Mr. Orduno-Ramirez's case until after the USAO obtained the video recordings, suggesting that she could have communicated the content of those recordings to the lead prosecutor before Mr. Orduno-Ramirez's sentencing. Oral Arg. at 30:00-30:45. But this suggestion is speculative and does not warrant disregarding the lead prosecutor's sworn statement that he was not aware of the videos at the time of sentencing.

16

guilty, so the intrusion did not affect the plea negotiations; and (2) his "sentencing bears no indicia of a tainted proceeding." *Id*. at 551-52. The court thus denied Mr. Orduno-Ramirez's § 2255 motion and declined to grant a COA. We granted a COA, and this appeal followed.

### III. **DISCUSSION**

In evaluating the denial of Mr. Orduno-Ramirez's § 2255 motion, "we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011).

On appeal, the Government does not dispute the district court's findings that (1) its acquisition of the video footage intruded on attorney-client communications or (2) the intrusion lacked a legitimate law-enforcement purpose. *See* Aplee. Br. at 28, 47. Mr. Orduno-Ramirez does not contend that he suffered any actual prejudice from the intrusion. Aplt. Br. at 12. The only disputed question is whether *Shillinger*'s conclusive presumption should extend to post-plea government intrusions.

### A. *No Conclusive Presumption of Prejudice*

Mr. Orduno-Ramirez urges us to reverse the district court and hold that *Shillinger*'s conclusive presumption categorically extends to sentencing. We are not persuaded this is the proper course.

A Sixth Amendment per se rule of prejudice is a blunt legal instrument. *Lustyik*, 833 F.3d at 1268 ("[A] rigid, *per se* rule is, by its nature, too blunt an instrument to account for the legitimate demands of the adversarial system.") (citation and

17

quotations omitted). The Supreme Court has cautioned against sweeping Sixth Amendment rules that "cut[] much too broadly." *Weatherford*, 429 U.S. at 557; *see* 3 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 2.9(g) (4th ed.) (explaining that in the Sixth Amendment context, a "*per se* standard is either overinclusive or underinclusive as compared to the application of that function to all relevant circumstances on a case-by-case basis").

The case to create a Sixth Amendment conclusive presumption must therefore be especially strong. The record must demonstrate a high likelihood of prejudice. *See Strickland*, 466 U.S. at 692. In deciding whether there should be a per se prejudice rule for post-plea intrusions, we consider the rationales underlying the *Shillinger* conclusive presumption for pretrial intrusions.

1. **Likelihood of Prejudice**

In *Shillinger*, we concluded that a pretrial government intrusion into attorney-defendant communications is so likely to cause prejudice at trial that "case-by-case inquiry into prejudice is not worth the cost." 70 F.3d at 1142 (quoting *Strickland*, 466 U.S. at 692). We repeatedly referred to the high risk that such an intrusion will prejudice the trial process. *Id.*[9] In *Cronic*, the Supreme Court said that the "Sixth Amendment guarantee is generally not implicated" without "some effect . . . on the

---

[9] We concluded that "a prejudicial effect on the reliability of the trial process must be presumed" in cases of intentional intrusion, and observed that "groundless prosecutorial intrusions are never harmless because they necessarily render a trial fundamentally unfair." *Shillinger*, 70 F.3d at 1142.

reliability of the trial process." 466 U.S. at 658. Neither *Shillinger* nor *Cronic* said anything about the likelihood of prejudice extending to sentencing.

A post-plea intrusion is less likely to cause prejudice than a pretrial intrusion because the latter can taint any part of a criminal prosecution—trial, sentencing, or both—and greatly expand the task of ascertaining prejudice as compared to a post-plea intrusion.[10] As the district court said in its December 2021 order, "when the alleged intrusion occurs after the petitioner entered a guilty plea or was convicted at trial, it eliminates the possibility that the intrusion could have tainted the petitioner's plea or conviction," ROA, Vol. I at 652, and thus "does not implicate the same potential for prejudice," *id*. at 655. In short, *Shillinger*'s primary concern—that a pretrial intrusion will prejudice the trial—is absent when the intrusion is post-plea.

Another way to assess the likelihood of prejudice is to compare the risk at trial and sentencing. Commonly understood features of sentencing suggest the risk of prejudice is lower at sentencing because the opportunity for a prosecutor to use information from attorney-defendant communications is narrower.[11] Judges and

---

[10] A district court evaluating a pretrial intrusion "face[s] the virtually impossible task of reexamining the entire proceeding to determine whether the disclosed information influenced the government's investigation or presentation of its case or harmed the defense in any other way." *United States v. Levy*, 577 F.2d 200, 208 (3d Cir. 1978).

[11] The following general observations briefly touch on only a few aspects of sentencing and are made with appreciation for the variety of trials and sentencings. They are, of course, subject to exceptions and debate. But, along with the other points made here about likelihood of prejudice, they support the norm of needing to establish prejudice for a Sixth Amendment violation.

prosecutors can and do play significant roles in both proceedings.  But at sentencing, the judge finds facts[12] and imposes punishment,[13] largely in reliance on the Probation Office's presentence investigation report.[14]  If the defendant pled guilty—which occurs in nearly 90 percent of federal cases[15]—the court may also rely on factual stipulations in the plea agreement.[16]  As a result, the prosecutor plays a lesser role relative to the judge at sentencing than at trial, especially when a plea agreement limits prosecutorial discretion.[17]  The prosecutor thus has less opportunity to influence sentencing than at trial with information gleaned from a post-plea

---

[12] The district judge "may accept any undisputed portion of the presentence report as a finding of fact" and "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary . . . ."  Fed. R. Crim. P. 32(i)(3)(A), (B).  *See United States v. Lozano*, 921 F.3d 942, 946 (10th Cir. 2019) (district court is factfinder at sentencing).

[13] "The court shall determine the kinds of sentence and the guideline range . . . ."  United States Sentencing Guideline § 1B1.1(a).  *See United States v. Smart*, 518 F.3d 800 (10th Cir. 2008) (district court makes ultimate determination of a defendant's sentence).

[14] A "probation officer shall make a presentence investigation of [the] defendant . . . and shall . . . report the results of the investigation to the court." 18 U.S.C. § 3552(a).  *See United States v. Harrison*, 743 F.3d 760, 763 (10th Cir. 2014) (explaining how the district court can use the facts in the presentence report to inform its sentencing).

[15] "Nearly ninety percent of all federal criminal cases involve guilty pleas and many of these cases involve some form of plea agreement."  U.S. Sent'g Guidelines Manual at 8 (U.S. Sent'g Comm'n 2021).

[16] *See United States v. Richardson*, 901 F.2d 867, 869 (10th Cir. 1990) (district court can, but is not required to, rely on stipulated facts in plea agreement).

[17] *See United States v. Scott*, 469 F.3d 1335, 1340 (10th Cir. 2006) (the government cannot argue for a higher sentence than agreed to in plea agreement).

intrusion.[18]  Further, judges can protect against the risk of prejudice to defendants at sentencing because they are often better situated than juries to screen improperly gained information.[19]

One further consideration cuts against creating a per se prejudice rule here based on likelihood of prejudice—a comparison between the facts underlying *Shillinger* and this case.  In *Shillinger*, a law enforcement official disclosed confidential attorney-client trial-preparation communications to the prosecution. 70 F.3d at 1137-38.  Here, the USAO obtained, after the guilty plea and before sentencing, soundless video footage of Mr. Orduno-Ramirez meeting with counsel. We viewed the likelihood of prejudice to be so great in *Shillinger* that we not only found a per se violation but also announced a broad per se rule for all pretrial intrusions.  The facts in this case present no comparable likelihood.

---

[18] Much of a prosecutor's influence over sentencing occurs before a plea or conviction through the charging decision, plea negotiations, and plea agreements— which occur before a post-plea intrusion.  *See* Arthur W. Campbell, Law of Sentencing § 12.1 (Sept. 2022 update).

[19] *See* Douglas A. Berman & Stephanos Bibas, *Making Sentencing Sensible*, 4 Ohio St. J. Crim. L. 37, 55 (2006) (In contrast to juries, "[j]udges . . . are repeat players with more information about criminal justice purposes and practicalities. Thus, they necessarily have broader insights about punishment options and how to sentence effectively . . . .  In short, judges are more flexible, expert, can better apply complex rules, and can try to equalize outcomes across a range of cases."); *see also Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 896 (10th Cir. 2000) ("[I]n bench trials, questions raised relative to the admission or exclusion of evidence become relatively unimportant, because the rules of evidence are intended primarily for the purpose of withdrawing from the jury matter which might improperly sway the verdict," whereas judges can "consider[] only competent evidence and disregard[] any incompetent evidence." (quotations and alterations omitted)).

Mr. Orduno-Ramirez advances various arguments about how the prosecutors can use "ill-gotten attorney-client communications" to prejudice a defendant at sentencing. Aplt. Reply Br. at 7-8; *see also* Aplt. Br. at 33-40. We agree that this is possible. For example, he contends that prosecutors could advocate for fact-intensive upward adjustments at sentencing, possibly based on improperly obtained information. Aplt. Reply Br. at 7-8. But the possibility of prejudice is not enough to warrant a per se rule. Instead, *Strickland* and *Cronic* admonish that "prejudice is presumed" only when "[p]rejudice . . . is *so likely* that case-by-case inquiry into prejudice is not worth the cost." *Strickland*, 466 U.S. at 692 (emphasis added). And for the reasons discussed above, post-plea intrusions do not meet that standard.

Mr. Orduno-Ramirez thus has not made the strong case needed for a conclusive presumption of prejudice based on a post-plea intrusion. He has given us no reason to expect a risk of prejudice at sentencing from a post-plea intrusion that rises to the level of what the *Shillinger* panel feared would occur at trial from a pretrial intrusion.[20] And he has not shown why we should disregard the Supreme Court's caution against Sixth Amendment per se prejudice rules.

---

[20] Indeed, the district court said in its December 2021 order that all § 2255 movants in the consolidated cases, including Mr. Orduno-Ramirez, who were seeking relief based on post-plea/pre-sentencing intrusions, "acknowledge that they cannot demonstrate the possibility of prejudice on their Sixth Amendment claims, but instead allege presumptive prejudice under the rule in *Shillinger*." ROA, Vol. I at 652. This alone shows that creating a per se prejudice rule would be "overinclusive . . . compared to" determining prejudice "on a case-by-case basis." 3 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 2.9(g) (4th ed.).

We intend none of the foregoing to suggest that post-plea government intrusions into attorney-defendant communications pose no significant risk to sentencing proceedings. They may do so, and should be taken seriously, but not through an overinclusive per se prejudice rule.

## 2. Deterrence

In *Shillinger*, this court also relied on deterrence to create a per se prejudice rule. We said "no other standard can adequately deter this sort of misconduct." 70 F.3d at 1142. Despite the district court's deep concern about the USAO's systemic intrusions into many attorney-defendant communications at the CCA, a concern that we share, it determined that deterrence was not sufficient to extend a conclusive presumption of prejudice to post-plea intrusions without "the fairness or reliability concerns identified" in *Shillinger*. ROA, Vol. I at 657.

Like the district court, we read *Shillinger* as weighing the likelihood of prejudice and the need for deterrence together as complementary factors. Although the USAO's systemic conduct may point to the need for a "prophylactic rule[]," *Shillinger*, 70 F.3d at 1142 (quotations and citations omitted), we are mindful of the Supreme Court's caution against per se or sweeping Sixth Amendment rules that obviate consideration of prejudice in every instance. We find insufficient reason here to adopt a per se rule.

\*　　\*　　\*　　\*

The "'benchmark' of a Sixth Amendment claim is 'the fairness of the adversary proceeding.'" *Shillinger*, 70 F.3d at 1141 (quoting *Nix*, 475 U.S. at 175).

23

At sentencing, a government intrusion into attorney-client communications does not render prejudice "so likely that case-by-case inquiry into prejudice is not worth the cost." *Id*. at 1142 (quoting *Strickland*, 466 U.S. at 692). Nor does the need to deter government misconduct warrant a conclusive presumption of prejudice. We therefore affirm the district court's determination that *Shillinger*'s conclusive presumption does not extend to post-plea intrusions.

## B. *Actual Prejudice*

Without a conclusive presumption, a defendant must suffer prejudice from a post-plea intrusion into attorney-client communications to obtain relief under the Sixth Amendment. The district court said the defendant must show prejudice, but we need not decide which party bears the burden because the Government has shown that Mr. Orduno-Ramirez has not been prejudiced, and he does not contend otherwise. We therefore leave open whether the defendant must show prejudice or the government must show lack of prejudice.[21] Because Mr. Orduno-Ramirez has not

---

[21] As the district court pointed out in its January 2021 and December 2021 orders, the Supreme Court has not resolved "the issue of who bears the burden of persuasion for establishing prejudice or lack thereof when the Sixth Amendment violation involves the transmission of confidential defense strategy information." ROA, Vol. I at 451; 645; 653 (quotations and citations omitted); *see Cutillo v. Cinelli*, 485 U.S. 1037, 1037-38 (1988) (White, J., dissenting from denial of cert.) (noting circuit split on who bears the burden to prove prejudice).

　　In most cases, a defendant alleging a Sixth Amendment violation must show prejudice. *See Strickland*, 466 U.S. at 658. But courts may shift the burden on an issue "when the true facts relating to a disputed issue lie peculiarly within the knowledge of" the party opposing relief, making it difficult for the party seeking relief to bear the burden of proof. *Hennessey v. Univ. of Kansas Hosp. Auth.*, 53 F.4th 516, 530 (10th Cir. 2022) (quotations and citation omitted); *see also Lima v. United States*, 708 F.2d 502, 509

been prejudiced, there is no Sixth Amendment violation and no ground for § 2255 relief.

In the district court, the judge and the Government assumed that Mr. Orduno-Ramirez bore the burden to show prejudice. Nonetheless, the Government introduced affirmative evidence and arguments demonstrating that Mr. Orduno-Ramirez suffered no prejudice. The Government showed:

(1) The lead prosecutor did not view the videos, and the other prosecutor withdrew from the case before Mr. Orduno-Ramirez's sentencing. ROA, Vol. II at 385-86. Thus, no prosecutor involved in the sentencing was aware of the contents of the recordings.

(2) The soundless video recordings provided no strategic value to the prosecution. Aplee. Br. at 52-53; ROA, Vol. II at 359-60.[22]

_____

(10th Cir. 1983) (noting the merit of "redistribut[ing] the burden [of proof] to those who have superior knowledge of the truth and better access to evidence").

In fact, the First Circuit uses a burden-shifting approach for government intrusions on attorney-client communications. *United States v. DelCologero*, 530 F.3d 36, 64 (1st Cir. 2008) ("[W]e only require defendants to make a prima facie showing of prejudice by proving that confidential communications were conveyed as a result of the government intrusion into the attorney-client relationship. The burden then shifts to the government to show that the defendant was not prejudiced; that burden is a demanding one." (quotations, citations, and alterations omitted)).

[22] The recordings depict only Mr. Orduno-Ramirez and his attorney talking without revealing their conversation. ROA, Vol. I at 258-60. Mr. Orduno-Ramirez says a viewer could "observe non-verbal communications" like "body language," or "use [] viewing software to zoom in, for instance, on a document." Aplt. Br. at 4 (quotations omitted). While this may be true in some cases, nothing in the record suggests that the Government could gain usable information from the videos in this case.

(3) The record reveals no irregularity in Mr. Orduno-Ramirez's sentencing.[23]

The Government therefore showed the intrusion did not cause prejudice, and Mr. Orduno-Ramirez does not contend he was prejudiced. We agree with the district court that Mr. Orduno-Ramirez's "sentencing bears no indicia of a tainted proceeding." ROA, Vol. II at 552.

## IV. CONCLUSION

We affirm the district court's denial of Mr. Orduno-Ramirez's § 2255 motion.[24]

---

[23] Mr. Orduno-Ramirez objected to a number of factual findings in his presentence investigation report. In response, the Government cited extensive evidence from the investigation into Mr. Orduno-Ramirez, including statements by his alleged co-conspirators. None of the information the Government relied on for sentencing could have come from the soundless video recordings. Mr. Orduno-Ramirez's 144-months prison sentence fell below the Guidelines range.

[24] On February 14, 2023, Mr. Orduno-Ramirez filed a motion asking us to order supplemental briefing on whether we should adopt a rebuttable presumption of prejudice when, between a plea and sentencing, the prosecution intrudes on defense attorney/client communications. We denied the motion because we do not decide that issue here. Mr. Orduno-Ramirez, nonetheless, submitted his arguments in a letter filed under Federal Rule of Appellate Procedure 28(j), and the Government filed a response.