FILED
United States Court of Appeals
Tenth Circuit

January 27, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ARRICK WARREN,

      Defendant-Appellant.

Nos. 14-3260 and 14-3261
(D.C. No. 2:13-CR-20081-CM-1)
(D. Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **SEYMOUR**, and **MATHESON,** Circuit Judges.

Arrick Warren pled guilty to two counts of distribution and one count of possession of cocaine base with intent to distribute within 1,000 feet of a public playground, and one count of maintaining a drug-involved premises, all in violation of 21 U.S.C. § 856(a)(1) and (a)(2). The district court found Mr. Warren was accountable for 728 kilograms of cocaine base and for possession of a firearm. The total sentencing guideline range was calculated to be 168 to 210

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, or collateral estoppel. It may be cited for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

months and the district court imposed a sentence of 180 months.  When Mr. Warren committed the offenses, he was serving a term of supervised release on a prior conviction in Iowa for offenses related to the distribution of cocaine base.  For violating his release conditions, the district court revoked his supervised release and sentenced him to 36 months in prison, to be served consecutively to the 180-month sentence.  Mr. Warren appeals both sentences.[1]

**I**

"When reviewing the district court's application of the sentencing guidelines, this Court reviews the district court's findings of fact for clear error and legal conclusions *de novo.*"  *United States v. Kitchell*, 653 F.3d 1206, 1226 (10th Cir. 2011) (citation omitted).  We "will not disturb a factual finding of the district court unless it has no basis in the record, and we view the evidence and inferences therefrom in the light most favorable to the district court's determination." *Id.* (quotation marks and citation omitted).  Viewed in that light, the facts show the following.

There was testimony at the sentencing hearing that on January 15, 2013, Mr. Warren twice sold cocaine base to a confidential informant in the amounts of .552 and .558 grams.  Both sales took place through the rear door of Mr.

---

[1] The district court combined the sentencing hearings for the offense of conviction and the revocation of supervised release.  We granted Mr. Warren's unopposed motion to consolidate his appeals from the drug offense sentence, No. 14-3260, and the supervised release revocation sentence, No. 14-3261.

Warren's residence at 1026 Reynolds. The next day officers executed a search warrant at the unoccupied residence. They found 20.14 net grams of cocaine base, and 50.1 net grams of compressed powder cocaine in a plastic baggie, a razor blade, a box of plastic sandwich baggies, and a scale in a cabinet near the rear door of the residence. They also recovered from a trash can in the kitchen a box of baking soda, which is used to convert powder cocaine to cocaine base. In the dining room, they found a black nylon bag containing approximately 300 grams of powder cocaine and $8,000 in U.S. Currency. They found $17,800 in U.S. currency in a safe in the bedroom, and a loaded .45 caliber handgun under a couch in the living room not far from the bedroom door. They also found three cell phones in the living room. During the search, they located a gas bill addressed to Mr. Warren at 1026 Reynolds, and a public utilities bill addressed to Loya Fuel at 924 Riverview. Mr. Warren had told his probation officer that Loya Fuel was his common law wife and the mother of two of his children.

Officers recently had conducted controlled buys of crack cocaine from a Mark Murphy at a residence at 924 Riverview, which was located roughly 1000 feet from the 1026 Reynolds address. Upon executing a search warrant there, they recovered a quantity of cocaine base as well as a public utilities bill addressed to Loya Fuel at 924 Riverview, a digital scale, a razor blade, and a box of sandwich baggies. Evidence introduced by the government at the sentencing hearing showed it was highly probable Mr. Warren signed the leases at both the 1026

Reynolds and the 924 Riverview residences. Both leases listed Mr. Warren and Loya Fuel as tenants. In addition, data from the three seized cell phones showed multiple text messages linking Mark Murphy to Mr. Warren.

In determining the amount of cocaine base attributable to Mr. Warren, the probation department converted the cocaine powder and cash to cocaine base equivalents and added that to the quantity of cocaine base from each of the two residences. It also attributed to Mr. Warren the firearm found under the couch at 1026 Reynolds, even though it did not contain his fingerprints. On appeal, Mr. Warren challenges the drug quantity calculation made by the district court, the firearm enhancement, and the district court's assessment of the 18 U.S.C. § 3553 sentencing factors. He also argues the court erred in issuing the above-guidelines sentence when it revoked his supervised release.

## II

### Drug Offence Sentence

*Drug Quantity*

Mr. Warren first contends the district court erred in imposing a sentence based on enhancements not proven by a preponderance of the evidence and by improperly weighing the factors enumerated in 18 U.S.C. § 3553 to determine the appropriate sentence. He argues that the powder cocaine should have been converted to its marijuana equivalent rather than to cocaine base and that the U.S. currency should not have been converted to cocaine base.

-4-

Pursuant to the guidelines, "it is proper to sentence a defendant under the drug quantity table for cocaine base if the record indicates that the defendant intended to transform powdered cocaine into cocaine base." *United States v. Angulo-Lopez*, 7 F.3d 1506, 1511 (10th Cir. 1993) (citations omitted), *superseded on other grounds as recognized in United States v. Kissick*, 69 F.3d 1048, 1053 (10th Cir. 1995). The district court found that Mr. Warren intended to transform the powder cocaine to crack. In so ruling, the court relied on the testimony of government witnesses regarding the purchases of crack from 1026 Reynolds, the evidence recovered in the search the next day indicating that the powder cocaine was being converted to crack cocaine at the house, and the sales of crack from the related residence at 924 Riverview. The court also observed that defendant's previous conviction was for conspiracy to distribute and possession with intent to distribute crack cocaine. Accordingly, the record supports conversion of the powder cocaine recovered from 1026 Reynolds to cocaine base for purposes of determining the drug quantity attributable to Mr. Warren under U.S.S.G. § 2D1.1.

Mr. Warren also contends the district court's decision not to calculate the drug quantity based on a 1:1 ratio of powder cocaine to cocaine base violated his equal protection rights. We have squarely rejected that argument. *See United States v. Brooks*, 161 F.3d 1240, 1247 (10th Cir. 1998) (holding that previous 100:1 ratio's distinction between crack cocaine and powder cocaine does not violate Fifth Amendment right to equal protection).

Nor did the district court clearly err in converting the U.S. currency seized from 1026 Reynolds to cocaine base and including it in the total drug calculation. Such conversion is proper "provided the court finds by a preponderance [of evidence] that the cash is attributable to drug sales which were part of the same course of conduct or common scheme or plan as the conviction count." *United States v. Hinson*, 585 F.3d 1328, 1341 (10th Cir. 2009) (quotation marks and citations omitted). The district court found that the cash in the safe should be converted to cocaine base because the preponderance of evidence showed the money in the safe was from drug sales. The court relied in part on the testimony of IRS Agent Jeffrey Thomas, who established that defendant's 2012 tax refund would not have been paid to defendant before January 13, 2013, the date the search warrant was executed. The court also relied on the testimony of U.S. Probation Officer Roderick Freeman that neither defendant's part time employment nor his tax return would account for the quantity of cash that was found. The district court found not credible the testimony of defendant's father, Cedrick Toney, who said defendant's money came from the family's music business and an inheritance from Mr. Toney's father. The record supports the district court's findings.

*Firearm Enhancement*

Mr. Warren also contends the government failed to present sufficient reliable evidence to support the firearm enhancement. Under U.S.S.G. §

2D1.1(b)(1), a court may apply a two-level enhancement "if a dangerous weapon (including a firearm) was possessed" in connection with a drug offense. "The initial burden is on the government to prove possession of the weapon by a preponderance of the evidence, which may be satisfied by showing 'mere proximity to the offense.'" *United States v. Alexander*, 292 F.3d 1226, 1231 (10th Cir. 2002) (quoting *United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir. 1997)). "This burden is satisfied when the government demonstrates that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *United States v. Hall*, 473 F.3d 1295, 1312 (10th Cir. 2007). The necessary showing is made where there is "[e]vidence that the weapon was found in a location where drugs or drug paraphernalia is stored." *Id.* "If the government meets this initial burden, the burden shifts to the defendant to show that it is clearly improbable the weapon was connected with the offense." *Id.*

The district court concluded that the government had shown a sufficient nexus between the weapon, defendant, and the drug trafficking activity, and that Mr. Warren had failed to show it was clearly improbable the gun was connected to the offense. In so ruling, the court relied on Officer Doleshaw's testimony that the handgun, which was found in Mr. Warren's house the day after he made two crack cocaine sales to a confidential informant, was located within 15 feet of the safe and approximately the same distance from the powder cocaine. The government thus met its burden of demonstrating a temporal and spatial

relationship between the weapon and the drug trafficking activity. Because Mr. Warren failed to provide any evidence to demonstrate it was "clearly improbable" that the weapon was connected to the offense, the district court did not err in imposing a two-level firearm enhancement.

*Consideration of 3553(a) Factors*

Citing *United States v. Smart*, 518 F.3d 800, 803 (10th Cir. 2008), Mr. Warren asserts the district court should have sentenced him in a lower range of 87 to 120 months under the factors enumerated in 18 U.S.C. § 3553. Because Mr. Warren failed to raise this issue at the sentencing hearing, our standard of review is plain error. *See United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007). Under the plain error standard, we may reverse only when there is "(1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citing *United States v. Lopez-Flores*, 444 F.3d 1218, 1222 (10th Cir. 2006)).

The sentencing transcript makes clear that the district court considered the factors set out in § 3553(a). The court described the nature and circumstances of the offense as (1) "involv[ing] defendant distributing crack cocaine within 1,000 feet of a prohibited location, a playground, on multiple occasions"; (2) being "in possession of a large amount of cocaine, cash, and a loaded firearm that was found in the residence that defendant was using to distribute cocaine"; and (3)

being "on supervised release after conviction and incarceration for a previous drug trafficking crime." ROA No. 14-3260, vol. II, pt. 2 at 453. It is plain from the court's findings that it was not persuaded by Mr. Warren's claim that the cash came from his tax refund and his legitimate business earnings.

Moreover, the court acknowledged defense counsel's "strenuous" argument in favor of a downward variance from the guideline range to a range of 87 to 120 months, and discussed Mr. Warren's attempts to provide the government with substantial assistance in other matters and cases, as well as information about Mr. Warren's background and history and supportive letters from family members and friends. The court recognized it had the authority to grant a variance or departure but found "that a sentence outside the guideline range would not be appropriate for you under your circumstances and convictions." *Id.* at 456. In imposing a sentence of 180 months imprisonment, which "is the mid range of that sentencing guideline imprisonment range," *id.*, the district court stated:

> [T]he sentence reflects the seriousness of the offense, promotes respect for the law and provides just punishment. Further, the length of the sentence should afford adequate deterrence and protect the public from further crimes of the defendant. [A] [s]ix-year term of supervised release will allow you the opportunity to receive correctional treatment in an effective manner, and assist with community re-integration.

*Id.*

Mr. Warren has failed to demonstrate any error, much less a plain one with respect to his claim that the district court failed to consider all applicable

§ 3553(a) factors. *Romero*, 491 F.3d at 1178. We accordingly reject his claim that the sentence imposed by the district court was procedurally unreasonable.

## II

### Supervised Release Violation

The district court found that Mr. Warren had committed 10 separate violations of the conditions of his supervised release. It noted that the Grade A violations, with a criminal history of I, yielded a guideline range of 24 to 30 months' imprisonment. It then imposed a 36 month term of imprisonment to be served consecutively to the sentence for the defendant's new criminal conduct.

On appeal, Mr. Warren challenges both the above-guidelines sentence of 36 months and the district court's order that the sentence be served consecutively to the current drug violation sentences. He argues the district court's consecutive revocation sentence of 36 months is procedurally and substantively unreasonable because it failed to account for his individual characteristics, offense conduct or his efforts to cooperate with the government. Aplt. Brief at 20.

We review Mr. Warren's revocation sentence for reasonableness, applying a deferential standard of review. *United States v. McBride*, 633 F.3d 1229, 1231-32 (10th Cir. 2011).

> "[W]e will not reverse a revocation sentence imposed by the district court if it can be determined from the record to have been reasoned and reasonable." *United States v. Contreras–Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005) (brackets and internal quotation marks omitted). Under our current nomenclature, a "reasoned" sentence is

> one that is "procedurally reasonable"; and a "reasonable" sentence is one that is "substantively reasonable." To say that the district court acted reasonably—either procedurally or substantively—is to say that it did not abuse its discretion. *See United States v. Alapizco–Valenzuela*, 546 F.3d 1208, 1214 (10th Cir.2008).

*Id.* at 1232. Because Mr. Warren did not object on procedural grounds after the district court imposed his sentence, we review the procedural reasonableness of the sentence for plain error. *See id.* at 1233.

In sentencing Mr. Warren, the district court stated that it had considered the § 3553(a) factors. It acknowledged the 36-month sentence was outside the advisory guideline range of 24 to 30 months, but it explained the upward departure was warranted by the type of criminal conduct and activity Mr. Warren was involved in and, particularly, by the fact that he was committing similar new offenses while on supervised release. It pointed out the government was advocating a much longer sentence.

While counsel for Mr. Warren asked the district court to run any supervised release term of imprisonment concurrently with the sentence for the underlying offense, the government sought consecutive sentences. Although 18 U.S.C. § 3584 gives the district court discretion to impose a concurrent or consecutive sentence in these circumstances, where a defendant is already subject to an undischarged term of imprisonment the policy guidelines advise:

> Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether

-11-

or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.

U.S.S.G. § 7B1.3(f). Notwithstanding the mandatory language in the policy guideline, the district court recognized that these policy guidelines are considered advisory only post-*Booker*. *See McBride*, 633 F.3d at 1232 ("These policy statements serve essentially the same role as the now-advisory sentencing guidelines issued by the Commission."). Given the circumstances of this case, we cannot say the district court erred in making the sentences consecutive.

Mr. Warren also argues the district court, in imposing the 36 month term of imprisonment, "failed to account for [the defendant's] individual characteristics, offense conduct, or his efforts to cooperate with the government." Aplt. Br. at 20. However, the court stated on the record that it had considered these factors, and a review of the entire sentencing hearing confirms this statement. Among other factors, the court found that the amount of powder cocaine in Mr. Warren's house, combined with the money in the duffel bag and his intent to convert the powder cocaine to crack, indicated that defendant was a major drug dealer.

To the extent Mr. Warren also asserts that the revocation sentence was substantively unreasonable, we are not persuaded. "To obtain relief, [Mr. Warren] must show that the actual sentence imposed was outside the range of reasonableness." *McBride*, 633 F.3d at 1232 (citing *United States v. Medley*, 476 F.3d 835, 840 (10th Cir. 2007)). As the district court pointed out, the government

was seeking a much longer sentence based on Mr. Warren's new convictions so soon after his release from serving his prior sentence for crack cocaine violations. On this record, we reject Mr. Warren's claim of substantive unreasonableness.

In sum, the district court did not abuse its discretion in applying the applicable § 3553(a) factors and the policy guideline to arrive at a revocation sentence above the guideline range.

## III

For the foregoing reasons, we AFFIRM the sentences imposed by the district court.

ENTERED FOR THE COURT


Stephanie K. Seymour
Circuit Judge