FILED
United States Court of Appeals
Tenth Circuit

February 13, 2025

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ARRICK WARREN,

    Defendant - Appellant.

No. 23-3268
(D.C. Nos. 2:13-CR-20081-JAR-1,
2:17-CV-02339-JAR,
2:19-CV-02220-JAR-JPO,
& 2:19-CV-02491-JAR)
(D. Kan.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **McHUGH**, **BALDOCK**, Circuit Judges, and **LUCERO**, Senior Circuit Judge.
_____

Arrick Warren is a federal prisoner who brought a pro se 28 U.S.C. § 2255 motion claiming he received ineffective assistance of counsel from his defense attorney. The district court denied that claim. Soon after, counsel entered an appearance on Warren's behalf and successfully moved to supplement his original § 2255 motion with a new claim that Kansas federal prosecutors intruded into the attorney-client relationship by listening to recordings of phone calls Warren made with his previous attorney while in pretrial detention. The district court later denied that second claim on the merits.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Still represented by counsel, Warren now applies for a certificate of appealability (COA) so he can challenge the district court's denial of both his § 2255 claims. We deny a COA and dismiss this matter.

## I. BACKGROUND & PROCEDURAL HISTORY

We begin with a relatively brief overview of this matter, saving additional details for the analysis section below.

### A. Indictment, Guilty Plea, and Sentence

In December 2013, a grand jury indicted Warren on four drug-related counts. He eventually chose to plead guilty without a plea agreement. The district court accepted the plea, held a four-day sentencing hearing on contested matters related to sentencing guidelines calculations, ruled against Warren on all those matters, and imposed a 180-month sentence.

Warren appealed some of the district court's sentencing decisions, but this court affirmed. *See United States v. Warren*, 636 F. App'x 450, 453–55 (10th Cir. 2016).

### B. Section 2255 Proceedings

#### 1. The Ineffective Assistance Claim

In June 2017, following his unsuccessful direct appeal, Warren filed a pro se § 2255 motion. He alleged he received ineffective assistance of counsel (IAC) because his attorney allegedly never explained how the sentencing guidelines could be applied to enhance his sentence.

In July 2018, while Warren's § 2255 motion was still pending, the district court entered a standing order appointing the Federal Public Defender for the District of Kansas to represent any federal defendant who may have a postconviction claim based on Kansas federal prosecutors' access to recordings of communications between detainees at the CCA-Leavenworth (a.k.a. CoreCivic) facility and their attorneys. *See United States v. Carter*, 429 F. Supp. 3d 788, 805 & n.45 (D. Kan. 2019); *see also id.* at 832–66 (summarizing Kansas federal prosecutors' gathering and use of video and telephone recordings from the CCA facility), *vacated in part on other grounds*, No. 16-20032-02-JAR, 2020 WL 430739 (D. Kan. Jan. 28, 2020).

In January 2019, with Warren's § 2255 motion still pending, the Kansas FPD e-mailed the district court announcing the FPD intended "to amend Mr. Warren's 2255 in the near future." R. vol. I at 1016. In April 2019—the FPD still not having entered an appearance or moved to amend Warren's § 2255 motion—the district court ruled on and denied the IAC claim, denied a COA, and entered final judgment.

2.     The Motion to Supplement and the First Appeal of the Ineffective Assistance Claim

In May 2019, the FPD entered an appearance on Warren's behalf and filed a "Motion to Supplement Mr. Warren's pro se § 2255 Motion." R. vol. I at 941; *see also Douglas v. Workman*, 560 F.3d 1156, 1187–95 (10th Cir. 2009) (per curiam) (establishing a multi-factor analysis that may permit a defendant to "supplement" an original postconviction petition with a new claim, despite entry of judgment on the original petition and inability to satisfy the standard for second or successive claims).

The motion asserted that the government had listened to Warren's attorney-client phone calls while he was a pretrial detainee housed at CCA-Leavenworth. Warren therefore sought to add, via supplementation, a § 2255 claim that the government had intentionally intruded on his attorney-client relationship in violation of the Sixth Amendment.

In June 2019, while this motion was still pending, Warren filed a pro se notice of appeal from the April 2019 denial of his original § 2255 motion (*i.e.*, the IAC claim). This court abated the appeal in light of the pending motion to supplement.

In July 2019, the district court granted the motion to supplement. The court stated, "Defendant's § 2255 motion is considered reopened only to allow filing of the Sixth Amendment claim that is the subject of [the motion to supplement]." R. vol. I at 1020. However, the district court did not formally reopen the original § 2255 proceeding. It left that judgment intact and opened a new case in which the Sixth Amendment intentional intrusion claim would be litigated.

This court then entered an order in Warren's pending-but-abated appeal, requiring Warren to address whether the court still had jurisdiction. The FPD responded with a voluntary motion to dismiss asserting that this court no longer had jurisdiction in light of the district court's order, but purporting to preserve Warren's IAC claim for later appeal, following resolution of the intentional intrusion claim. This court entered a text-only order granting that motion without comment.

4

3.    This Appeal

In November 2023, the district court denied Warren's and many other defendants' intentional intrusion claims, and likewise denied a COA. Warren then filed a notice of appeal from that judgment and from the district court's April 2019 judgment on his IAC claim. The Clerk of Court ordered further briefing from both sides on whether the appeal of the April 2019 judgment was timely. The Clerk then referred the jurisdictional issue to this panel and further allowed Warren to file the COA application now at issue.

## II.    APPELLATE JURISDICTION

A timely notice of appeal is jurisdictional in a civil case, *Bowles v. Russell*, 551 U.S. 205, 214 (2007), and § 2255 proceedings are considered civil cases for purposes of the appellate rules, *see United States v. Pinto*, 1 F.3d 1069, 1070 (10th Cir. 1993). Therefore, Warren's deadline to appeal was sixty days from judgment. *See* Fed. R. App. P. 4(a)(1)(B)(i) (establishing a sixty-day deadline to appeal from a civil judgment where the United States is a party). He was required to file his notice of appeal before this deadline, else we do not have jurisdiction to consider his COA application. *See Watkins v. Leyba*, 543 F.3d 624, 625–26 (10th Cir. 2008).

Warren's January 3, 2024 notice of appeal was indisputably timely as to the district court's November 14, 2023 judgment (disposing of the intentional intrusion claim) because less than sixty days had elapsed from entry of that judgment. The question is whether that same notice was timely as to the April 25, 2019 judgment

5

disposing of the IAC claim, which the district court never vacated despite granting the motion to supplement.

In these circumstances, we treat the district court's decision to grant the motion to supplement as having vacated the April 2019 judgment, even if the district court never formally took that step. The district court stated that "Defendant's § 2255 motion is considered reopened <u>only</u> to allow filing of the Sixth Amendment claim that is the subject of [the motion to supplement]." R. vol. I at 1020. From the district court's perspective, the portion of the sentence beginning with "<u>only</u>" was perhaps most important, restricting the scope of further proceedings. From our perspective, the first part of the sentence is most important: "Defendant's § 2255 motion is considered reopened." It convinces us that the district court intended to strip its earlier judgment of its final character. *Cf. Utah v. Norton*, 396 F.3d 1281, 1286 (10th Cir. 2005) ("A final judgment is one that terminates all matters as to all parties and causes of action." (internal quotation marks omitted)).

The fact that the district court opened a new civil proceeding to adjudicate the supplemental claim (*i.e.*, the intentional intrusion claim) does not convince us otherwise. This appears to have been nothing more than an administrative device to help the court organize the numerous claims then being filed by former CCA detainees.

We therefore conclude that the relevant final judgment for both claims (IAC and intentional intrusion) was the November 2023 judgment. In consequence, this appeal was timely as to both claims, and we proceed to the COA analysis.

## III.   LEGAL STANDARD

"Unless a circuit justice or judge issues a [COA], an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B).  A COA requires "a substantial showing of the denial of a constitutional right."  § 2253(c)(2).  This means Warren "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Warren requests a COA on the question of whether the district court properly denied his IAC claim without holding an evidentiary hearing.

### A.      Additional Background

#### 1.      The Change-of-Plea Hearing

At the change-of-plea hearing, the district court proceeded through the required colloquy, including the possible maximum sentences (sixty years as to some of the counts, twenty years as to the others).  The court also confirmed that Warren and his attorney, Ms. Dionne Scherff, had "discussed how the sentencing commission guidelines might apply to [his] case."  R. vol. I at 376.  And the court confirmed Warren understood that:

- "depending on the outcome of the investigation as to the amount of drugs involved, [he] might be subject to a mandatory minimum sentence," *id.* at 374;

- "the court [would] not be able to determine the guideline sentence applicable to [his] case until after a presentence investigation report has been completed, and [Warren] and the government have had an

7

opportunity to challenge the facts reported by the probation officer," *id.* at 376–77;

- "there's no limitation on the information the court could consider at the time of sentencing concerning [his] background, character, and conduct, provided that the information was reliable," including "uncharged related criminal activity," *id.* at 377, 378; and

- "if the sentence is more severe than [he] expected, [he would] still be bound by [his] plea and [would] have no right to withdraw it," *id.* at 378–79.

After all this (and other standard parts of the colloquy), Warren reaffirmed his decision to plead guilty without a plea agreement, and then signed the plea petition in open court.

Next, the court asked the government to read the factual basis of the charges into the record. The government began by noting that Warren "reserve[d] the right to argue relevant conduct and other issues relating to the accuracy of the facts contained herein." *Id.* at 381. The government then recited findings from its investigation, including the search of a house Warren rented that yielded crack cocaine (*i.e.*, cocaine base), powder cocaine, large amounts of cash, a handgun, and a photograph allegedly showing Warren "holding a large stack of currency and appearing to have a firearm in his waist-band." *Id.* at 383.

After this recitation, the court asked Warren if he had read the government's factual basis ahead of the hearing. Before Warren could answer, Scherff (Warren's attorney) interjected that Warren "did not get a copy of this [*i.e.*, the written version of the government's factual basis]" before the hearing. *Id.* at 385. The government responded that it had sent a plea agreement to Scherff a couple of days earlier that

included an identical factual basis. Based on this, the court asked Warren, "[A]re you admitting to the court that you did, in fact, do exactly what that factual basis indicates that you did . . . ?" *Id.* at 386. Warren responded by requesting an opportunity to consult with Scherff, which the court granted.

Following Warren's consultation with Scherff, the court re-asked whether Warren was admitting the facts set forth in the government's statement of the factual basis. Scherff responded on Warren's behalf that she had indeed received an e-mail from the government the day before with a proposed plea agreement, but Warren "has elected[,] in order to preserve all of his appeal rights and everything, to plead without a plea agreement." *Id.* at 387. Scherff specifically stated that Warren was reserving the right to contest possession of the handgun (which was not part of any of the charges). In the same vein, Scherff insisted that the photograph the government recovered was not a photograph of Warren. Scherff also stated that Warren would contest any conversion of cash to drug quantities.

The court informed Warren that the issues his attorney was raising would be resolved at sentencing, and that the court's resolution could affect his sentence. The court stated, "[T]here might be a firearm enhancement or things of that nature," and more generally, "[I]f I find the government is accurate, you may face certain sentencing enhancements," and it confirmed that Warren understood as much. *Id.* at 391. The court also later confirmed that Warren's decision to plead guilty was his own, and that he was "satisfied with the advice and services of [his] attorney." *Id.*

9

at 394.  Finally, after discussion about additional unrelated matters, the court accepted the guilty plea.

### 2. Sentencing & Appeal

The presentence investigation report (PSR) recommended calculating Warren's guidelines range by converting the quantity of powder cocaine into its crack cocaine equivalent, as the guidelines allow when the defendant intended to transform the powder into crack.  The PSR further recommended treating the cash as the equivalent of crack cocaine, as allowed by the guidelines when money is related to the distribution of crack cocaine.  Finally, the PSR attributed possession of the handgun to Warren, and increased his guidelines calculation accordingly.  This and other factors led to a total offense level of 35, and Warren had a criminal history category of III, yielding a guidelines recommendation of 210–62 months.

The district court held a four-day sentencing hearing which mostly comprised taking evidence about the contested matters: intent to transform powder cocaine into crack, the connection between the cash and distribution of crack cocaine, and possession of the handgun.  At the outset of that hearing, the court confirmed with Warren that Scherff had reviewed the PSR with him and advised him about possible sentencing outcomes based on the information in the PSR.

Following the evidence, the district court ruled against Warren on each of the contested factual matters.  For reasons not relevant here, however, the court ruled that Warren's total offense level was 33, not 35, so his guidelines range was 168–210

months.  The court sentenced Warren to 180 months on each count, running concurrently.[1]

          3.       <u>Section 2255 Proceedings</u>

After his unsuccessful appeal on sentencing issues, Warren filed a pro se § 2255 motion alleging that Scherff had been ineffective at the change-of-plea phase because she failed to advise him "how the federal guidelines would affect his case." R. vol. I at 854.  Specifically, Warren alleged:

- "There was no explanation on the conversion of the seized money to crack for sentencing purposes whatsoever." *Id.*

- "Neither was it explained that the powder cocaine could have been converted to crack for sentencing purposes." *Id.* at 855 (emphasis removed).

- "There was never any explanation, even in the most simplistic terms, that a firearm that was not even remotely related to the offense, could have been attributed to Warren and the offense." *Id.*

- "Neither was there any explanation the guidelines could be enhanced for Maintaining a Residence for Drug Distribution . . . ." *Id.* at 856.

He further alleged that, if he had known these were possibilities, he would have gone to trial instead of pleading guilty.  As for his statements at the change-of-plea hearing, he alleged that those statements were based solely on what he knew at the time, whereas he did not realize Scherff's ineffectiveness until he reviewed the PSR.

The district court ruled that "the motion and the files and records of the case conclusively show[ed] that [Warren was] entitled to no relief," § 2255(b), and

---

[1] Later, retroactive guidelines amendments led to resentencing at 161 months.

accordingly did not hold an evidentiary hearing, *see id.* For the district court, the key principle was that "'[t]he representations of the defendant [at a plea hearing] . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.'" R. vol. I at 924 (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)). The district court concluded that Warren's and his attorney's statements at the change-of-plea hearing, followed by Warren's failure to say anything about the relevant issues during the sentencing hearing (despite claiming that by then he knew his attorney had failed to advise him properly), show he could not overcome *Blackledge*'s "strong presumption of verity." The district court therefore denied the § 2255 motion and declined to grant a COA.

B.    COA Analysis

Warren argues that reasonable jurists could debate whether the district court properly resolved his IAC claim without an evidentiary hearing. Because this is a procedural ruling, the question for COA purposes is whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

At the merits phase, this court would apply the abuse-of-discretion standard to review the district court's decision to resolve the claim on the papers alone. *See United States v. Weeks*, 653 F.3d 1188, 1200 (10th Cir. 2011); *see also Fleming v. Evans*, 481 F.3d 1249, 1257 (10th Cir. 2007) (incorporating the relevant standard of review into the COA question of whether reasonable jurists could disagree). We do

12

not believe jurists of reason would debate whether the district court abused its discretion when it concluded that the record created by the change-of-plea and sentencing proceedings, as detailed above, "conclusively show[ed] that [Warren was] entitled to no relief," § 2255(b), and therefore not entitled to a hearing on his IAC claim. We accordingly deny a COA on this claim.

## V.    INTENTIONAL INTRUSION INTO THE ATTORNEY-CLIENT RELATIONSHIP

Warren's intentional intrusion claim relied solely on the intrusion itself as the basis for relief. In other words, he did not argue that the alleged intrusion into his attorney-client communications affected the outcome of his case in any way. He argued instead that such intrusion is a structural error that requires relief regardless of the effect on the defendant's case.

About ten months before Warren noticed his appeal, this court held that post-plea intrusions into attorney-client communications do not create a presumption of prejudice, so defendants must show actual prejudice to obtain relief based on such intrusions. *See United States v. Orduno-Ramirez*, 61 F.4th 1263, 1276 (10th Cir.), *cert. denied*, 144 S. Ct. 388 (2023).[2] Part of Warren's supplemental § 2255 claim involved post-plea intrusions. Warren believes *Orduno-Ramirez* was wrongly

---

[2] This court has since held that the defendant must show prejudice regardless of when the alleged intrusion occurred (*e.g.*, pre-plea or post-plea, pre-trial or post-trial, etc.). *See United States v. Hohn*, 123 F.4th 1084, 1087–88 (10th Cir. 2024) (en banc).

decided but concedes that it forecloses relief here.  He includes the claim explicitly for preservation purposes only.[3]

In this light, we deny a COA on his intentional intrusion claim.

## VI.   CONCLUSION

We deny a COA and dismiss this matter.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

---

[3] Warren's supplemental § 2255 claim also alleged pre-plea intrusions.  The district court dismissed this portion of the claim following our holding in *United States v. Spaeth*, 69 F. 4th 1190, 1213 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 1355 (2024), that "[w]hen a defendant voluntarily and knowingly pleads guilty, the defendant acknowledges that unconstitutional conduct preceding the guilty plea is irrelevant to the admission of factual guilt."  Warren does not seek a COA to challenge that ruling.